# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
Filed: December 8, 2022

```
*  *  *  *  *  *  *  *  *  *  *  *  *
CHERISH MOORE,                        *          UNPUBLISHED
                                      *
                                      *
          Petitioner,                 *          No. 20-1589V
                                      *
v.                                    *          Special Master Gowen
                                      *
SECRETARY OF HEALTH                   *           Tetanus-diphtheria-pertussis
AND HUMAN SERVICES,                   *          ("Tdap"); Shoulder Injury Related
                                      *          to Vaccine Administration
          Respondent.                 *          ("SIRVA"); Fact Ruling.
*  *  *  *  *  *  *  *  *  *  *  *  *
```

*Jessica A. Olins*, Maglio Christopher & Toale Law Firm, Seattle, WA, for Petitioner.
*Madelyn E. Weeks*, U.S. Department of Justice, Washington, D.C., for Respondent.

## FINDING OF FACTS[1]

On November 13, 2020, Cherish Moore ("Petitioner") filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Program" or "Vaccine Act").[2] Petitioner alleges that she received a tetanus-diphtheria-acellular pertussis ("Tdap") vaccination on October 2, 2019, which was the actual cause of her developing a right Shoulder Injury Related to Vaccine Administration ("SIRVA"). (ECF No. 35).

After carefully considering the medical records and the affidavits filed in this case, I find that Petitioner's right shoulder pain began within 48 hours of her vaccination and is consistent with on-table SIRVA.

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. §3501 note (2012), **because this ruling contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the ruling is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). "An objecting party must provide the court with a proposed redacted version of the decision." *Id.* **If neither party files a motion for redaction within 14 days, the ruling will be posted on the court's website without any changes.** *Id.*

[2] As set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. § 300aa-10 to 34 (2012).

## I.      Procedural History

On November 13, 2020, a petition was filed under the Vaccine Program, alleging that as a result of receiving a Tdap vaccination on October 2, 2019, the petitioner suffered a SIRVA. Petition at Preamble (ECF No. 1).  On December 21, 2021, respondent filed a status report which indicated that he was amenable to informal resolution of the claim and requested that the Rule 4(c) deadline remain suspended while informal resolution was explored.  Status Report ("Rept.") (ECF No. 22).  On April 4, 2022, there was a communication of a settlement offer between the parties.  Notice of Communication of Settlement Offer (ECF No. 30).  A status report filed on May 5, 2022 indicated that the parties reached an impasse regarding the onset of symptoms and requested this Court to issue a briefing schedule to resolve the issue before us now.  Status Rept. (ECF No. 31).

On July 13, 2022, petitioner filed a Motion for Finding of Fact, requesting the Court to find Petitioner's SIRVA occurred within 48 hours of vaccination.  Petitioner's ("Pet.") Motion ("Mot.") for Findings of Fact (ECF No. 35).  Petitioner argues that the preponderance of the evidence supports onset within 48 hours based on medical records, petitioner's pleadings and sworn statements, as well as the sworn statements of two other individuals recollecting Petitioner's onset.  *Id*. at 9.  Petitioner contends that all medical records in the case are consistent with her statements in her affidavit that her right shoulder pain began immediately after vaccination on October 2, 2019.  *Id*. at 6; Pet. Exhibit ("Ex.") 13.  Petitioner also asserted that the medical records are "contemporaneously-recorded notes from qualified medical professionals that contain information consisting of histories, diagnostic test results, physical exam results, and medical conclusions relevant to Petitioner's onset, made in the course of diagnosis and treatment" to support their finding of onset within 48 hours of vaccination. (ECF No. 35).

Respondent filed a response to petitioner's motion on August 29, 2022, arguing "petitioner has not provided preponderant evidence that she developed right shoulder pain within forty-eight hours of her Tdap vaccination."  Respondent's ("Resp.") Rept. (ECF No. 36).  Specifically, respondent argues that the only evidence that supports onset of 48-hours are petitioner's own statements which are not supported by the medical records.  *Id*. at 8.  Respondent also argues "that petitioner has conflated an injection site reaction with the onset of the alleged shoulder injury."  *Id*.  Further, respondent asserts that statements in the medical records are vague to support an onset within 48 hours of vaccination.  *Id*. (citing *Bulman v. Sec'y of Health & Human Servs.*, No. 19-121V, 2021 WL 4165349, at *4 (Fed. Cl. Spec. Mstr. Aug. 12, 2012).

Petitioner filed a reply on September 6, 2022, reiterating her argument that the onset of her SIRVA occurred within 48 hours of vaccination and that the injury was consistent with an on-table SIRVA rather than a localized reaction.  Pet. Reply (ECF No. 37).  The reply argues that the medical records, petitioner's pleadings and sworn statements, as well as the statements of Mr. Timothy Moore and Ms. Shelly Rascoe all support the preponderance of the evidence standard for the timing of onset.  *Id*. at 3-4. Petitioner states that there are no records that would lend support to the contention of an onset later than 48 hours from the vaccination, and that she has not wavered or changed her account regarding the onset.  *Id*. at 4.  This case was reassigned to my docket on September 9, 2022.  Notice of Reassignment (ECF No. 39).

This matter is now ripe for adjudication.

## II.    Legal Standards Regarding Fact Finding

In 2017, the Vaccine Injury Table was amended to add SIRVA, the injury at issue in this case.  42 C.F.R. § 100.3(a)(I)(c).  It will be categorized as a presumptive injury for injectable vaccines if it may be proven, by the preponderance of the evidence that the first symptom or manifestation of onset of the injury occurred within 48 hours of the vaccine's intramuscular administration.  *Id*.  The Qualifications and Aids to Interpretation ("QAI") specify that a vaccine recipient shall be considered to have suffered SIRVA if that recipient manifests (i) no history of pain, inflammation, or disfunction of the affected shoulder prior to administration that could explain post-vaccination symptoms (ii) the pain occurs within the specified time-frame (iii) the pain and reduced motion are limited to the shoulder in question and (iv) no other condition is present that could explain the patient's symptoms. *See* 42 C.F.R. § 100.3(c)(10).

The process for making determinations in Vaccine Program cases regarding factual issues begins with consideration of the medical records. 42 U.S.C. § 300aa-11(c)(2). The special master is required to consider "all [ ] relevant medical and scientific evidence contained in the record," including "any diagnosis, conclusion, medical judgment, or autopsy or coroner's report which is contained in the record regarding the nature, causation, and aggravation of the petitioner's illness, disability, injury, condition, or death," as well as "the results of any diagnostic or evaluative test which are contained in the record and the summaries and conclusions." 42 U.S.C. § 300aa-13(b)(1). The undersigned must weigh the submitted evidence and the testimony of the parties' offered experts and rule in petitioners' favor when the evidence weighs in their favor. *See Moberly*, 592 F.3d at 1325-26 ("Finders of fact are entitled—indeed, expected—to make determinations as to the reliability of the evidence presented to them and, if appropriate, as to the credibility of the persons presenting that evidence"); *Althen*, 418 F.3d at 1280 ("close calls" are resolved in petitioner's favor).

The special master is then required to weigh the evidence presented, including contemporaneous medical records and testimony. *See, e.g. Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993). Specifically, "[t]he special master or court may find the first symptom or manifestation of onset   of an injury, disability, illness, condition, or death described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." 42 U.S.C. § 300aa-13(b)(2). If the medical records are clear, consistent, and complete, then they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2005 WL 6117475, at *19-20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

However, there is no presumption that medical records are complete as to all of a patient's conditions, as the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions.". *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1382-83 (Fed. Cir. 2021). Afterall, "[m]edical records are only as accurate as the person providing the information." *Parcells v. Sec'y of Health & Human Servs.*, No. 03-1192V, 2006 WL 2252749, at *2 (Fed. Cl. Spec. Mstr. July 18, 2006).

And, importantly, "the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance." *Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991) (quoting the decision below), *aff'd per curiam,* 968 F.2d 1226 (Fed. Cir. 1992). The *Murphy* Court also observed that "[i]f a record was prepared by a disinterested person who later acknowledged that the entry was incorrect in some respect, the later correction must be taken into account." *Id.*

Although witness testimony may be offered to overcome the weight afforded to contemporaneous medical records, it must be "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs.*, No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). Further, the Special Master must consider the credibility of the individual offering the testimony. *Andreu,* 569 F.3d at 1379; *Bradley v. Sec'y of Health and Human Servs.,* 991 F.2d 1570, 1575 (Fed. Cir. 1993). In determining whether to afford greater weight to contemporaneous medical records or other evidence there must be evidence that this decision was the result of rational determination. *Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993). The Special Master is obligated to consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y Health & Human Servs.,* 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8), *aff'd,* 746 F.3d 1334 (Fed. Cir 2014); *see also Burns,* 3 F.3d at 417.

## III.    Summary of Evidence Submitted

### a.    Medical Records

On October 2, 2019, petitioner received three vaccinations.  Pet. Ex. 1.  She received the measles, mumps, and rubella ("MMR") vaccination on her left arm.  *Id.* at 4.  She also received the Tdap and the varicella vaccinations in her right deltoid.[3]  *Id.*

On October 25, 2019, petitioner presented to Courtney Marcotte, RPA-C at Adirondack Medical Practice for "complaints of continuous pain in right arm injection site." Pet. Ex. 15 at 21. Under the "Subjective" section of the record (Subjective Report), it states, "she had some vaccinations three weeks ago.  She had Dtap and varicella in her right arm.  She states three weeks later it sems to be getting worse.  Did not hurt at the time of vaccination.  She states the next day she did have a large red area.  The redness went away.  She states then it was inflamed. There has been tenderness.  She states the whole area is painful to rotate."  *Id.*  Physician Assistant Marcotte wrote, "suspect[ed] tendonitis from favoring the shoulder initially" and that redness was "likely just a localized reaction."  *Id.* at 22.  A right shoulder x-ray was ordered.  *Id.*

On December 12, 2019, petitioner presented to Bridget Molly, FNP-BC at Adirondack Medical Practice.  Pet. Ex. 15 at 24.  The nurse note stated that, "[p]atient is here to discuss pain in right deltoid x 3 months (she believes it was from a previous vaccine in that arm)."  *Id.*  The subjective report notes that petitioner "states that since she had the vaccination, she has had severe pain in her right deltoid and aches all the time and pt very upset and frustrated."  *Id.*  The

---

[3] The Tdap vaccine is intended to be administered intramuscularly and the varicella vaccine is intended to be administered subcutaneously.

report also indicates that the pain has worsened and become worse with passive and active abduction. *Id.* The final recommendation for this visit stated, "Pt has pain in right deltoid s/p tdap/varicella vaccination that is severe and chronic for 2 mo+ and are not improving and therefore, since she had an X-ray and the results were negative MRI indicated and ordered at today's visit." *Id. 2*

Petitioner had an MRI of her right shoulder on January 7, 2020. Pet. Ex. 3 at 22. The MRI revealed a "full-thickness tear of the supraspinatus tendon located anteriorly, proximity to the rotator cuff," and "a small focus of fluid…just superior to the rotator cuff interval with a thin rim of peripheral enhancement of this fluid that appears to be contiguous with the subacromial/subdeltoid bursa." *Id.* The impression was, "1. Localized full-thickness tear involving the anterior aspect of the supraspinatus tendon; 2. Mild subacromial/subdeltoid bursitis that appears to be contiguous with the focal rotator cuff tear; 3. No abnormal fluid collection or inflammatory findings within the deltoid muscle, where the vaccine would typically be injected." *Id.* at 23.

On January 16, 2020, petitioner returned to Bridget Molloy, FNP-BC to discuss the results of the MRI taken on January 7, 2020. Pet. Ex. 15 at 28. Petitioner reported "that she has never had issues with her right shoulder before this immunization and has never mentioned…an issue with her right shoulder prior to the immunizations that she received at the health dept." *Id.* Further, FNP-BC Molloy recorded, "Immediately following the injections in her right shoulder, she started to notice edema and erythema surrounding the posterior injection where she had the MMR placed and the following day, she woke up with a tremendous amount of pain and has been ever since." *Id.* FNP-BC Molloy wrote that, "pt cannot abduct her RUE more than 30 degrees and cannot lift her LUE above her head or place behind her back and pt states that she has a deep, throbbing ache in the upper aspect of her left upper arm that extends up into her right shoulder and pt states that it is constant." *Id.* Under "Objective," petitioner demonstrated "decreased ROM noted in right upper extremity due to subjective pain in right shoulder with ROM exercises (active and passive). Patient unable to lift [her] right upper extremity above shoulder level due to pain/severity of the pain." *Id.* at 30. Petitioner was referred to Lake Placid Sports Medicine for an orthopedic consult and treatment for "right shoulder complete rotator cuff tear with chronic pain at site and loss of ROM as a result. The pain came shortly after [petitioner] had Tdap and MMR vaccination which were performed the same day. Tdap in upper deltoid and MMR in posterior aspect of patient's right upper arm." *Id.*

On April 15, 2020, petitioner presented to orthopedic surgeon William J. Smith, M.D. upon referral from FNP-Molloy. Pet. Ex. 7 at 10. The medical record states, "[Petitioner's] right shoulder has been problematic since she got a series of inoculations in her shoulder, including a booster for tetanus. At least contemporary with the onset of her symptoms. The symptoms began several months ago and she has already had plain films and MR imaging." *Id.* Petitioner reported that the symptoms are bad enough that they wake her up routinely and the symptoms respond to anti-inflammatory medication. *Id.* On exam, petitioner demonstrated "subtle weakness of abduction versus resistance," and she was positive on the Whipple and Hawkins tests. *Id.* Petitioner was unable to perform a liftoff test and it was difficult for her to put her arm behind her back. *Id.* Dr. Smith reviewed petitioner's MRI and wrote, "MRI reviewed, and my disagreement with the radiologist is probably a quibble. That is, I think the

patient has a high-grade bursal-sided rotator cuff tear rather than a full-thickness tear of the supraspinatus… I just do not agree that the tear goes through the capsular layer all the way into the glenohumeral joint." *Id.* Dr. Smith recommended that petitioner undergo a shoulder arthroscopy with rotator cuff repair and he explained why for someone at age 49 with a high grade partial thickness tear "the literature suggests a better outcome with earlier surgical management, especially in someone with a dominant-arm problem." *Id.*

Petitioner opted for shoulder surgery on May 19, 2020. Pet. Ex. 7 at 5. The pre-operative diagnosis was, "right shoulder impingement and rotator cuff tear," and the post-operative diagnosis was, "right shoulder impingement and rotator cuff tear plus biceps tendonitis." *Id.* The petitioner underwent a complex shoulder surgery arthroscopically which included a supraspinatus tendon repair, biceps tenodesis and subacromial decompression with bursectomy. The operative finding included a 2 cm tear of the supraspinatus tendon on the bursal side as Dr. Smith had concluded upon reading the MRI prior to surgery.

On June 3, 2020, petitioner returned to Dr. Smith for her first post-operative visit. Pet. Ex. 7 at 11. Sutures were removed, and the report indicated that petitioner was in a modest amount of pain and comfortable doing a home-based exercise program. *Id.* At the second post-operative visit with Dr. Smith on July 6, 2020, petitioner was said to be on track after the surgery, taken out of her abductor pillow sling, and asked to begin structured formal physical therapy. *Id.* at 4. Dr. Smith noted that petitioner's "internal rotation is quite good. External rotation is back to neutral with her arm at her side." *Id.* On August 5, 2020, petitioner returned to Dr. Smith and wrote that petitioner "could not be happier." *Id.* at 2. Petitioner's physical exam revealed "excellent strength and full recruitment and very good shoulder rhythm, normal liftoff….Strength now matching the contralateral side." *Id.* She did have some stiffness on her rotational arc. *Id.* Dr. Smith encouraged petitioner to "get out and get active." *Id.*

### b. Affidavits and Declarations

#### i.   Petitioner Cherish Moore

Petitioner executed an affidavit on November 11, 2020. Pet. Ex. 13 (ECF No. 7). Petitioner is a charge nurse at an assisted living facility and was taking college courses to complete her nursing degree. In her affidavit, petitioner stated that prior to the vaccinations, she had no pain, aches, or weaknesses in either of her upper limbs, and that the two vaccines she received on October 2, 2019 were the Tdap vaccine in her right deltoid and a varicella vaccine in the back of her right arm. *Id.* at 1. She noted that she questioned the placement of this injection but was told it was common. *Id.*

Petitioner stated that her right arm was "sore immediately following the injections", and as "a nurse she understood that often this can be the case, even for several weeks." *Id.* at 2. She explained that approximately one week after the injections, she observed a "huge red welt on the back of my right arm, which days later turned into a moveable mass of fluid." *Id.* Petitioner stated that she outlined this area with a marker as a way to monitor its growth, but two days later the area resolved. *Id.* One month after the initial set of vaccinations, and "despite reporting a still aching right arm," she was administered a second varicella vaccination in the same area. *Id.*

Petitioner stated, "Shortly after, I noticed the right arm pain getting worse with an inability to sleep on the affected side, hence I decided to call my physician." *Id.* Petitioner stated that she "demanded an MRI" as it became difficult to raise her right arm or place it behind her back. *Id.*

Petitioner stated she underwent rotator cuff repair surgery on May 10, 2020. *Id.* At the time of this affidavit, petitioner stated that she was "strictly limited with activities as I have to wear a pillow sling 24/7," and she needs assistance getting dressed, she cannot drive and "find it extremely difficult to perform any daily activity as I am right hand dominant." *Id.*

### ii.     Petitioner's Coworker Ms. Shelly Rascoe

On May 22, 2022, petitioner's coworker Ms. Shelly Rascoe made a declaration pursuant to 28 U.S.C. §1746 which was filed with this Court on June 2, 2022. Pet. Ex. 19. She first recalled that in October 2019, petitioner discussed with her that she had received several vaccinations that were required for college. *Id.* The petitioner had voiced to Ms. Rascoe that her arm was hurting and causing her discomfort, with the area of concern primarily being her upper right arm. *Id.* Petitioner's coworker then stated that approximately one week after receiving the injections, the petitioner had asked her to assess the site. *Id.* The site at that point is noted as being hard, red, and containing a large fluid like mass. *Id.* Ms. Rascoe then states that the area in question was outlined for monitoring, and that petitioner was advised to seek medical attention because her coworker thought that she had a cellulitis developing. *Id.*

### iii.    Petitioner's Husband Mr. Timothy Moore

On May 22, 2022, petitioner's husband Mr. Timothy Moore executed an affidavit. Pet. Ex. 20 (ECF No. 33). Mr. Moore stated that his wife attended the Clinton County Department of Health to receive several vaccinations required for college in October 2019. *Id.* Mr. Moore recalled that on October 2, 2019, his wife returned home with a complaint of right arm discomfort, which led to pain that evening because of which the petitioner reported an inability to sleep. *Id.* Mr. Moore further affirmed that petitioner's pain, discomfort, and inability to lay on the affected limb continued and is what ultimately resulted in the right shoulder rotator cuff surgery. *Id.*

## IV.    Finding of Fact

### a.    Onset

Respondent sets forth two arguments against onset. First, respondent argues that petitioner conflated an injection site reaction with the onset of her alleged SIRVA. Respondent's ("Resp.") Report ("Rept.") at 8. Respondent states that at petitioner's first appointment following the vaccinations at issue, petitioner reported that she did *not* have right arm pain at the time she received the vaccination, however, petitioner did report that she developed a large red area on her the day after vaccination. *Id.* (original emphasis); *see also* Pet. Ex. 15 at 21. Respondent argues that the physician's assistant Marcotte noted that petitioner's arm was "normal to inspection." *Id.* at 15; Pet. Ex. 15 at 23. Additionally, respondent asserts that the statements of Ms. Rascoe, petitioner's co-worker, does not specify that petitioner's shoulder pain

began within 48-hours. Resp. Rept. at 9. Instead, as respondent asserts, Ms. Rascoe, provides "a history of an injection site reaction that occurred one week after petitioner's receipt of the Tdap vaccination." *Id.* at 9. Further, respondent states that at the January 16, 2020 appointment, petitioner reported "edema and erythema immediately following receipt of an MMR vaccination," and this statement "undermines petitioner's overall credibility, as this report is more consistent with an injection site reaction than SIRVA and references a vaccination that petitioner received in the opposite arm." Resp. Rept. at 9; Pet. Ex. 15 at 28.

The second argument respondent advanced against onset is that the medical records are too vague to support a finding that petitioner experienced shoulder pain within 48-hours of vaccination. Resp. Rept. at 9. Respondent states that the medical records are nonspecific to the onset of shoulder pain, using words phrases like "since vaccination," and "after recent immunizations." *Id.*; Pet. Ex. 15 at 24; Pet. Ex. 7 at 10.

Petitioner argues that the medical records, contain contemporaneously recorded notes from qualified medical professionals, in addition to the sworn statements by petitioner, her husband and co-worker, support a finding of onset of shoulder pain within 48-hours after receipt of the Tdap vaccination. Pet. Brief at 9. Additionally, petitioner argues that there are no records that "would lend support for the contention that onset occurred later than 48 hours following vaccine administration." *Id.* at 10.

After a review of the medical records, the sworn statements, and the briefs submitted by both parties, I find that petitioner has demonstrated by preponderant evidence that her right shoulder pain occurred within 48-hours of the Tdap vaccine she received on October 2, 2019.

Both of respondent's arguments that petitioner's onset of pain did not occur within 48-hours of the Tdap vaccination are unpersuasive. First, it is an undisputed fact that petitioner received a varicella vaccination in the back of her right arm on the same day she received the Tdap vaccine administered into her right deltoid. *See* Pet. Ex. 1 at 4. The skin reaction that petitioner complains about is more clearly attributable to the varicella vaccination than to the Tdap vaccination. In her affidavit, petitioner states that she received the varicella vaccine "in the back of my right arm." Pet. Ex. 13 at 1. She also observed "a huge, red welt on the back of my right arm, which days later turned into a moveable mass of fluid." *Id.* at 2. Petitioner explained that two days later, the area on the back of her right arm resolved, but her right arm pain continued. *Id.* The pain in her right deltoid, where the Tdap vaccine was administered persisted.

Petitioner's affidavit was consistent with the medical records, which show she experienced a skin reaction at the injection site of the varicella vaccine, but simultaneously experienced pain where she received the Tdap injection. On December 12, 2019, petitioner reported to Kim Lathrop, LPN with complaints of "pain in the right deltoid." Ms. Lathrop recorded that petitioner had the "Tdap in the right deltoid *to the left of the varicella vaccination*." Pet. Ex. 15 at 24. Petitioner reported that she has "severe pain in her right deltoid and [it] aches all the time." *Id.* While the injection-site reaction was not noted in the record, what is noted is that petitioner received the varicella vaccine and the Tdap vaccine on the same arm, but in two different places. Further, petitioner clearly states that she was experiencing "severe pain in her right deltoid," where the Tdap vaccine was administered. In the "History of Present Illness"

recorded by Lauren Marois, CA, at Adirondack Medical Practice on January 16, 2020.  Ms. Marois recorded:

> Patient…is here to discuss the result of her recent right shoulder MRI, which was ordered in response to patient's subjective complaints of severe right shoulder pain which started after recent immunization and states that she had the MMR booster and her Tdap booster administered at the same time in the right deltoid region, Tdap in mid-right deltoid and MMR in posterior aspect of right upper arm….

Pet. Ex. 15 at 28.  This record also differentiates where the two vaccines were administered, with the varicella being administered in the back of petitioner's right arm where she experienced a skin reaction and the Tdap into her "mid-right deltoid."  Additionally, Ms. Marois wrote that "[petitioner] noticed edema and erythema surround *the posterior injection*."  *Id.* (emphasis added).  Again, this record demonstrates that the injection site reaction was associated with the varicella vaccination.

Given that petitioner consistently reported the injection-site reaction being in the location where she received the varicella vaccination and the way subcutaneous injections are given, slightly below the dermis, it is much more likely that the varicella was the source of the local, visible reaction.  On the other hand, the Tdap vaccine is intended to be administered intramuscularly and when administered too high, as with other intramuscular injections, is capable of causing injury to the deeper structures of the bursa and rotator cuff tendons. Petitioner's orthopedist, Dr. Smith, observed both a partial tear of the supraspinatus tendon and apparent damage to the adjacent bursa requiring a bursectomy in the course of the shoulder surgery.  Pet. Ex. 7 at 5.  The operative note confirmed Dr. Smith's interpretation of petitioner's MRI, and appears to describe precisely the type of injury that can be caused by improper injection technique in an intramuscular injection administration with a partial tear of a major rotator cuff tendon near the bursa with apparent damage to the bursa as well.  Additionally, petitioner explained that her pain was emanating from her right deltoid, the location where she received the Tdap vaccination.  Thus, I find that the Tdap injection was the source of the petitioner's right shoulder pain and dysfunction, while the varicella vaccine likely caused the externally visible redness and hardening.  Petitioner's shoulder pain and mobility impairment remained persistent and gave rise to the surgery as described above—while the local injection site reaction was transitory and separate from the SIRVA injury.  For these reasons, the respondent's argument that the local inflammatory reaction somehow negates the onset of a SIRVA injury when the record demonstrates an injection site reaction associated with the varicella vaccine and pain associated with the intramuscular injection received on the same day is unavailing.

Secondly, petitioner's medical records are not vague as to the onset of her right shoulder pain.  At her first appointment following vaccination, on October 25, 2019, the section of the record under "Nurse Note," states, "Patient is here with complaints of *continuous pain in right arm injection site.  Patient states she got the vaccination on October 2nd.*"  Pet. Ex. 15 at 21 (emphasis added).  At her appointment on December 12, 2019, FNP Molloy recorded, "[petitioner]…is here today with [complains of] pain in right deltoid [status post] vaccination with varicella (10/2 and 11/12) and with Tdap (10/2) in right deltoid to left of varicella

vaccination…pt states since she had the vaccination, she has had severe pain in her right deltoid and aches all the time." *Id.* at 24. Petitioner reported that she has been icing and taking ibuprofen and Tylenol for the pain since then. In these two medical records, petitioner describes that she was experiencing pain in her right deltoid because of the vaccinations she received on October 2, 2019. Petitioner provided the dates on which she received the vaccines and attributes the onset of pain to "two days later," to the Tdap vaccination and the initial varicella vaccination. Further, the "Nurse Note," from the same appointment, notes that petitioner's pain in her right deltoid had been ongoing for three months. *Id.* at 24 ("Patient is here to discuss pain in right deltoid x 3 months). Finally, FNP-Molloy wrote, "[Patient] has *pain* in right deltoid [status post] tdap/varicella vaccination that is severe and chronic for 2+ months, and is not improving….." *Id.* at 26. Petitioner's treating medical provider associated petitioner's right arm pain to the Tdap and varicella vaccinations petitioner received on October 2, 2019. Finally, at petitioner's first orthopedic evaluation by Dr. Smith, he recorded that petitioner's "right shoulder has been problematic since she got a series of inoculations in her shoulder, including a booster for tetanus." Pet. Ex. 7 at 10. Dr. Smith's use of the word "since" in his note can easily be understood to mean that petitioner reported the pain began at the time of the vaccination and has continued to the time of his evaluation.

Addressing the respondent's argument about the need for specific reference to pain onset within 48 hours, in *Miller,* a recent SIRVA case, Chief Special Master Corcoran explained that respondent's view that the only way petitioners can demonstrate onset is with contemporaneous records "that state the date of onset with specificity," ignores that "this kind of fact issue can be (and often is) resolved in a petitioner's favor *despite* a lack of specificity." *Miller v. Sec'y of Health & Human Servs.*, No. 20-0959V, 2022 WL 2187589, at *4 (Fed. Cl. Spec. Mstr. Apr. 29, 2022). Chief Special Master Corcoran reasoned that "special masters weigh all items of evidence collectively," and that "several reasonable and reliable pieces of evidence supporting a temporal onset claim may satisfy preponderance even if no *single* item specifically records onset being reported *literally* within the timeframe specified by the Table." *Id.,* at *4. He observed that "injured petitioners often employ vague temporal language, based on their lack of awareness of the importance for Program purposes of specificity. This cannot reasonably be held against petitioners." *Id.* I agree with Chief Special Master Corcoran's reasoning in *Miller*. While the words "since" and "after" may be imprecise, they do provide relevant temporal information. As discussed above, Dr. Smith wrote that petitioner's "right shoulder has been problematic *since* she got a series of inoculations in her shoulder, including a booster for tetanus." Pet. Ex. 7 at 10. The use of the word "since" provided both the starting point for petitioner's pain and also documented the persistence of the petitioner's right shoulder pain.

In addition to Chief Special Master Corcoran's reasoning in *Miller* about histories given by patients, it should be observed that most physicians are not documenting the onset of an injury or illness while contemplating the Vaccine Program requirements. Most medical personnel are unaware of the need for documentation of onset within a specific timeframe, which is solely a Program requirement. It makes no difference to the orthopedist or other physician that is attempting to diagnose and treat a patient, several months post vaccination, whether the pain began one, two, three or more days after the vaccination. For purposes of diagnosing and prescribing treatment, the history given by the patient is important to tell the physician if the pain or injury began close in proximity to the vaccination, whether it had been there before, where the

injection was given, and if it has remained consistently painful since that time.  In this case, that is precisely what occurred.  Petitioner provided a history to her treating orthopedist, who performed an exam based on the history provided by petitioner, recommended imaging and then performed a recommend surgery without the need to know whether the pain began specifically within 48 hours of receiving the Tdap vaccine.

Further, the Vaccine Act allows a special master to "find the first symptom or manifestation of onset…of an injury, disability, illness, condition…described in a petition occurred within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." 42 U.S.C. § 300aa-13(b)(2).  The Vaccine Act recognizes that medical records may be imprecise or incomplete with respect to onset and the respondent's insistence that the medical records provide the precise timing for onset is inconsistent with the Act.

Finally, nothing in the medical record directly contradicts the petitioner's assertion that onset occurred within 48 hours of vaccine administration.  *See Kirby*, 997 F.3d at 1383 ("the absence of a reference to a condition or circumstance is much less significant than a reference which negates the existence of the condition or circumstance.") (quoting *Shapiro v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 532, 538 (2011)).  There are no records that would lend support to the contention that the injury occurred later than 48 hours from the time of the injection, and the petitioner's statements, along with the statements from petitioner's husband and coworker do not provide a different account of events.  As noted above, on October 25, 2019, petitioner complained of "continuous pain in right arm injection site."  Pet. Ex. 15 at 21.  The December 12, 2019 medical report states, "since she had the vaccination, she has had severe pain in her right deltoid."  *Id.* at 24.  On January 16, 2020, she reported that the day after the vaccine administration, "she woke up with a tremendous amount of pain and has been ever since."  *Id.* at 28.  In these three records, petitioner attributes the onset of her right shoulder pain to the vaccines she received on October 2, 2019.

The petitioner, Mr. Moore, and Ms. Rascoe have submitted credible statements that the petitioner experienced pain in her right shoulder almost immediately after receiving the Tdap vaccine on October 2, 2019.  The medical records of multiple post-vaccination visits support these statements and sufficiently document the petitioner's contention that the pain began within 48 hours of vaccination.  The record also documents no prior medical history of pain in the right shoulder had ever been mentioned to her family physician.  Pet. Ex. 7 at 10.

In summary, I find neither of respondent's arguments persuasive given the standard of proof required by the Vaccine Program.  Petitioner's statements have been supported both by her medical records and the declarations of two other individuals.  Petitioner sought treatment shortly after the vaccination, and then continually thereafter related her pain to the vaccination at subsequent medical visits.  The records, taken together, establish the finding of a SIRVA within the appropriate timeframe caused by the intramuscular Tdap injection occurring in temporal proximity to a local injection site reaction, which I find was caused by the separate subcutaneous varicella injection.  Preponderant evidence establishes that petitioner's pain to her right deltoid was caused by the intramuscularly administered Tdap injection, was persistent and gave rise to

11

surgery months later.  The local reaction to the varicella injection was transitory and unrelated to the SIRVA injury.

## V.    Conclusion

I have carefully reviewed the record, including the affidavits, medical records, and the respondent's Rule 4(c) report.  I find that petitioner's onset of SIRVA occurred within 48 hours of her Tdap vaccination on October 2, 2019.

The parties are now encouraged to resolve the remainder of this case informally.  If the parties wish to retain any experts to opine about causation, the parties must deliver this Ruling Finding Facts to the proposed experts. Any expert opinion must recognize the facts as I have found them in such opinion.  *Burns v. Sec'y of Health & Human Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (finding that the special master properly rejected the testimony of petitioner's medical expert because the expert based his opinion on facts not substantiated by the record).

Therefore, in accordance with the above, the following is hereby **ORDERED:**

1) **Within thirty (30) days, by Monday, January 9, 2023,** petitioner shall forward a demand for settlement to the respondent and file a status report indicating completion.

2) **Thirty days thereafter,** respondent shall file a status report reporting on the progress of settlement discussions or indicating if he intends to continue to defend against this claim.

**IT IS SO ORDERED.**

**s/Thomas L. Gowen**
Thomas L. Gowen
Special Master
